IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

J & J SPORTS PRODUCTIONS, INC.                                        PLAINTIFF

V.                                                  CAUSE NO. 3:10-CV-00160-CWR-LRA

FIDEL MARTINEZ,
D/B/A THE MAMBO RESTAURANT & BAR                                      DEFENDANT

**ORDER**

The above-styled cause is before the Court on the Defendant's Motion for Summary Judgment [Docket No. 10]. Upon review of the request, the parties' briefs on the subject, and the exhibits submitted alongside the same, the Court concludes that the requested relief is not appropriate and must be denied.

J & J Sports Productions, Inc. (hereinafter "J & J"), is a California corporation that sells broadcasting rights to sporting events, such as pay-per-view boxing matches. It contends that it owned the rights to the March 15, 2008, contest between Manny Pacquiao and Manuel Marquez, as well as all undercard fights immediately prior thereto. J & J alleges that Fidel Martinez (hereinafter "Martinez"), doing business as The Mambo Restaurant and Bar (hereinafter "Mambo Restaurant") in Jackson, Mississippi, intercepted the broadcast without a license and showed an undercard bout without J & J's permission.

According to an affidavit [Docket No. 12-2] sworn to by investigator Aundrea Trotter, she visited the Mambo Restaurant just before 10 p.m. on March 15, 2008, and observed a total of three televisions, including a large projector screen near a bar. Trotter avers that an undercard fight was televised at the restaurant, which had 75 patrons at the time.

Joseph Gagliardi, the president of J & J, also avers via affidavit [Docket No. 12-1] that

the Mambo Restaurant did not purchase a license to broadcast the Pacquiao-Marquez fight or any undercard bout. Gagliardi outlines several surreptitious methods through which one might intercept a J & J broadcast, but he insists that, to the best of his knowledge, such an interception is not possible through innocent mistake.

For his part, Martinez does not dispute the contention that the Mambo Restaurant televised the undercard fight as Trotter's affidavit describes. However, he does dispute the validity of J & J's claim, and toward that end, he offers three grounds for summary judgment in his favor. First, Martinez claims that he is merely the Mambo Restaurant's registered agent and therefore cannot be held liable for the actions of a principal. Second, Martinez alleges that J & J has pled relief under irreconcilable legal theories and, therefore, is not entitled to proceed on at least one of the claims. Third, Martinez contends that because J & J is not licensed to do business in Mississippi, state law prohibits it from availing itself of Mississippi's courts.

**Issue No. 1: Whether Martinez was Merely an Agent.** As his first submitted basis for summary judgment, Martinez argues that he "is merely the agent for service of process" for the Mambo Restaurant. Defendant's Memorandum [Docket No. 11] at 1. In 2008, The Mambo Restaurant & Bar, Inc., was a corporation organized pursuant to Mississippi law. *See* Exhibit 1 to Motion for Summary Judgment [Docket No. 10-1]. As nothing more than an agent, Martinez argues that he cannot suffer individual liability for the actions of his principal.

Under Mississippi law, "agents for a disclosed principal . . . incur no individual liability, absent fraud or other equivalent conduct." *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989). *See also Gray v. U.S. Fid. & Guar.*, 646 F. Supp. 27, 29 (S.D. Miss. 1986) (Wingate, J.).

2

The evidence leaves no genuine issue of material fact as to whether Martinez was, in fact, the Mambo Restaurant's registered agent. However, in the case at bar, J & J has offered evidence that Martinez was not only the Mambo Restaurant's registered agent but also its sole incorporator. Specifically, the Articles of Incorporation feature only the signature of a John Martinez. *See* Exhibit 1 to Motion for Summary Judgment. *See also* Exhibit 2 to Motion for Summary Judgment [Docket No. 12-2] ("Affidavit of Fidel J. Martinez"). Therefore, in the light most favorable to J & J, the evidence shows that Martinez was acting not as an agent but on behalf of himself.[1]

That genuine issue of material fact makes summary judgment inappropriate on this basis.

**Issue No. 2: Whether J & J Pled Inconsistent Legal Theories.** In its Complaint, J & J seeks relief pursuant to both Title 47, Section 553 and Title 47, Section 605 of the United States Code. The former commands that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system . . . ." 47 U.S.C. § 553(a)(1). By contrast, the latter forbids the divulgence of broadcasted materials by a "person receiving, assisting in receiving, transmitting, or assisting in transmitting[ ] any interstate or foreign communication *by wire or radio* . . . ." 47 U.S.C. § 605(a) (emphasis added).

Both parties agree that these statutes cannot simultaneously provide relief out of a single

---

[1] This argument most naturally lends itself to the suggestion that J & J cannot pierce the "corporate veil" between Martinez and the Mambo Restaurant. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."). However, Martinez's motion for summary judgment makes no reference to that principle, and J & J's response therefore does not address such a position. Martinez does argue that he cannot be held individually liable, but only because he was an agent rather than a principal, and not because he and the Mambo Restaurant were distinct entities. *See* Plaintiff's Memorandum in Opposition [Docket No. 13] at 5-6.

cause of action. As the Third Circuit explained in *TKR Cable Company v. Cable City Corporation*, 267 F.3d 196 (3rd Cir. 2001), the two provisions address wholly distinct occurrences: Section 605 "appli[es] only to satellite transmissions insofar as they are actual airborne transmissions," *id.* at 205, whereas "Congress clearly enacted § 553 with the primary purpose of addressing satellite-initiated cable transmissions." *Id.* In other words, while a signal is in transmission from a satellite, its interceptions are covered by Section 605. But when the satellite-initiated signal becomes a cable transmission, the statute prohibiting its interception is Section 553. *See also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 526 n.16 (5th Cir. 2005) (citing with approval *TKR Cable Co.*, 267 F.3d at 200-06).

Martinez argues that "the Plaintiff is not entitled to recover in this action under both" provisions. Def. Memo at 7. J & J counters that Rule 8(d) of the Federal Rules of Civil Procedure permits alternative theories of recovery, even when they are inconsistent. Moreover, J & J avers that its reliance on the two theories is due to the fact that "[a]t the time of filings its Amended Complaint, Plaintiff was unable to ascertain whether Defendant had intercepted the Program via satellite or via cable."[2] Pl. Memo in Opp. at 6.

At the moment, evidence within the record creates a genuine issue of material fact on both theories. Trotter claims in her affidavit that she saw the undercard boxing match televised at the Mambo Restaurant. Viewed in the light most favorable to J & J's case, that evidence could support a jury's verdict on either theory. Ultimately, of course, the evidence presented might

---

[2] The docket sheet contains no record of an Amended Complaint.

demand rejection of one theory.[3] For now, though, summary judgment is inappropriate.

**Issue No. 3: Whether J & J is Precluded from Bringing Suit in Mississippi.** Finally, Martinez argues that J & J cannot avail itself of Mississippi's courts because it is not authorized to do business in the state.

Martinez relies on Section 79-4-15.02(a) of the Mississippi Code,[4] which provides that "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." However, the Fifth Circuit has held that this statute "cannot be enforced if [its] application would unreasonably burden interstate commerce by prohibiting suits growing out of transactions in interstate commerce." *Fred Hale Mach., Inc. v. Laurel Hill Lumber Co., Inc.*, 483 F.2d 58, 60 (5th Cir. 1973). *See also Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 34 (1974). Undoubtedly, regardless of the manner in which the Mambo Restaurant received the boxing broadcast, the reception involved interstate commerce in one way or another. *See United States v. Miles*, 122 F.3d 235, 245 (5th Cir. 1997) ("The meaning of the term 'channel of interstate commerce'" includes "television and radio broadcast frequencies[ ] and satellite communication frequencies on, over, and through which flow . . . information which constitute[s] commerce between places in different states.").

J & J's broadcast existed in interstate commerce, and viewed in the light most favorable

---

[3] This is not necessarily so, of course. It is possible that the evidence, when viewed in the light most favorable to J & J, will continue to support both theories' viabilities (i.e., that the Mambo Restaurant intercepted the broadcast in manners violating both Section 553 and Section 605).

[4] This is Mississippi's "door-closing" statute. *See Northfield Ins. Co. v. Odom Ind., Inc.*, 119 F. Supp. 2d 631, 632 (S.D. Miss. 2000) (Lee, J.).

to its case, the evidence demonstrates that precluding suit for allegedly illegal reception thereof would unreasonably burden interstate commerce. Therefore, Mississippi's door-closing statute should not bar J & J from pursuing its claims.

## **CONCLUSION**

Genuine issues of material fact exist on each of the questions presented by Martinez. Viewed in the light most favorable to J & J's case, the evidence supports conclusions that (1.) Martinez was not acting as a mere agent, (2.) Martinez intercepted J & J's broadcast in violation of both Section 553 and Section 605, and (3.) J & J is not precluded by Mississippi's door-closing statute from pursuing relief in a Mississippi court.

Therefore, Martinez's Motion for Summary Judgment is denied.

SO ORDERED this Seventh day of April 2011.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge